**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**
**BANKRUPTCY DIVISION**

**IN RE:**
**EQUIVEST ST. THOMAS, INC.,**                    **Case No.: 07-30011 (JKF)**
                                                 **Chapter 11**
                    **Debtor.**


**BOARD OF DIRECTORS,**                           **Lead Adv. Proc. No. 07-3004 (JKF)**
**BLUEBEARD'S CASTLE HILLTOP**
**VILLA CONDOMINIUM**                             **Related to Adv. Doc. No. 370** [Motion
**ASSOCIATION, an unincorporated**                for Summary Judgment on All Claims]
**association in its own behalf and on**
**behalf of its members, et al.,**

                    **Plaintiffs,**

**v.**

**JOHN CAVANAUGH and WILLIAM**
**F. REIGHLEY,**

                    **Defendants.**


**MEMORANDUM OPINION**[1]

    Before the court is Defendant John Cavanaugh's and Defendant William F. Reighley's

(hereinafter, the "Defendants" or "Cavanaugh and Reighley") "Motion for Summary Judgment

on All Claims" (hereinafter, the "Motion for Summary Judgment").  Adv. Doc. No. 370.  For the

reasons that follow, Defendants' Motion for Summary Judgment is GRANTED.[2]

---

    [1]The court's jurisdiction was not at issue.  This Memorandum Opinion constitutes our
findings of fact and conclusions of law.

    [2]Plaintiffs and Defendants all consented to the jurisdiction of and entry of final orders by
                                                                        (continued...)

1

## Background

This adversary proceeding was initiated by the Board of Directors of three condominium associations which represented the owners of timeshare condominium units at Bluebeard's Castle Resort.  The Defendants, John Cavanaugh and William Reighley, are former equity holders and managers of the Resort.

The Plaintiffs are resorts and timeshare developments located on the island of St. Thomas in the United States Virgin Islands.  Collectively, these resorts and developments are known as Bluebeard's Castle Resort (hereinafter, the "Resort"), which is comprised of four separate developments: Bluebeard's Castle Hilltop Villas, Bluebeard's Castle Villas I, Bluebeard's Castle Villas III, and Bluebeard's Castle Pirates' Pension.  For purposes of this action, the Plaintiffs are represented by the Board of Directors of three of these condominium Associations: Hilltop Villas, Villas I and Villas III (hereinafter, the "Associations").  Defendant Cavanaugh is one of the individuals responsible for the initial development of the Resort, which was originally owned by Bluebeard's Castle, Inc. (hereinafter, "BCI").[3]  Together with Defendant Reighley, Defendant Cavanaugh formed a corporation known as Castle Acquisitions, Inc. (hereinafter, "Castle Acquisitions") which provided paid property management services for the Resort.  Eventually, the Defendants formed a second company known as Castle Holdings, LLC (hereinafter, "Castle

---

[2](...continued)
the Bankruptcy Court in this adversary proceeding as provided under 28 U.S.C. §§ 157, 158. *See* Plaintiffs' Affidavit Consenting to Jurisdiction and Finality, Adv. Doc. No. 252.  *See also* Consent to Entry of Final Orders by the Court Pursuant to 28 U.S.C. § 157 and 158, Adv. Doc. No. 353.

[3]BCI is the original developer of the Resort and Defendant Cavanaugh was an original controlling shareholder of BCI.  Second Amended Complaint, Adv. Doc. No. 346-1, at 18, ¶¶ 48-49 and 22-23, ¶ 72(a).

Holdings") in which they vested ownership of the Resort.[4]  Castle Holdings was sold to Kosmas
Group International (hereinafter, "Kosmas") in 1998 and the Defendants became employees of
Kosmas.  In conjunction with Castle Acquisitions, Kosmas provided property management
services to the Associations between August 1998 and August 1999.  Cavanaugh and Reighley's
employment with Kosmas, as well as their service on the Board of Directors of the Associations,
was terminated by Kosmas on March 30, 1999.[5]  A short time after March 30, 1999, Kosmas
sold Castle Holdings to Equivest Finance.  In 2001, the assets of Castle Acquisitions and Castle
Holdings were merged to form a single corporation known as Equivest-St. Thomas, Inc.
(hereinafter, "Equivest-St. Thomas").  In February 2002, while maintaining its corporate
identity, Equivest Finance was acquired by Cendant Corporation (hereinafter, "Cendant")
through its wholly owned subsidiary, Cardigan Acquisitions, Inc., which, in turn, is a subsidiary
of Fairfield Resorts, Inc. (hereinafter, "Fairfield's Resorts").  From January 2002 to October
2004, Fairfield Resorts, in conjunction with RCI Resort Management, Inc. (hereinafter, "RCI
Resorts"),[6] served as the property managers for Equivest-St. Thomas.

　　　　This adversary stems from a complaint filed by the Plaintiffs against numerous
Defendants, including Cavanaugh and Reighley.  The action was initially filed against Equivest-

---

[4]Castle Holdings, LLC wholly owned the stock of both BCI and Castle Acquisitions.

[5]Shortly thereafter, Cavanaugh and Reighley, as plaintiffs, initiated suits against Equivest
Finance, Kosmas, and BCI.  After Equivest Finance was sold to a subsidiary of Cendant Corp. in
2002, the parties settled.

[6]As explained in the Plaintiff's Second Amended Complaint, "[Fairfield Resorts] is a
corporation wholly owned by Cendant (directly or indirectly, as parent or "grandparent"
company of this subsidiary), and has been since February 2002. . . . RCI Resort Management,
Inc., operationally, has been merged with, and is currently a division of, [Fairfield Resorts],
although it has retained its distinct corporate identity."  Second Amended Complaint, Adv. Doc.
No. 346-1 at 21, ¶¶ 66-67.

St. Thomas and BCI, and Cavanaugh, individually, in the Superior Court of the Virgin Islands on

November 11, 2004.  A First Amended Complaint was filed on January 4, 2005, at which time

Reighley was added as a Defendant.

On September 23, 2005, Plaintiffs filed a Motion for Leave to File Second Amended

Complaint on the grounds that the prior complaints had been filed by counsel no longer

representing the Plaintiffs and that Plaintiffs' new counsel had since reviewed the evidence and

law relevant to the case.[7]  A Second Amended Complaint was filed in district court on or about

December 5, 2005.  On December 28, 2005, a Motion to Dismiss Second Amended Complaint

was filed.  On August 23, 2006, Equivest-St. Thomas filed an Amended Answer and

Counterclaim to the Plaintiffs' Second Amended Complaint.[8]  On October 23, 2006, the Superior

Court of the Virgin Islands denied the Motion to Dismiss Second Amended Complaint.  On July

2, 2007, the case was removed to the District Court of the Virgin Islands and was ultimately

referred to the Bankruptcy Court on or about August 10, 2007.[9]

---

[7]Plaintiffs' Second Amended Complaint was first filed in this adversary proceeding at
Adv. Doc. No. 346 on July 10, 2009, with a Notice of Filing of Superior Court Filings.  The
same complaint was filed again at Adv. Doc. No. 381 with another Notice of Filing of Superior
Court Filings which states that the Second Amended Complaint, as well as a Motion to Dismiss
Second Amended Complaint with Memorandum and the Superior Court's Memorandum and
Order regarding that Motion, "may have been inadvertently omitted in the transfer of documents
from the Superior Court to the Bankruptcy Court in this Adversary Proceeding."  Adv. Doc. No.
381, at 2.

[8]Equivest-St. Thomas' counterclaim set forth four counts for damages and other relief
against the Plaintiffs.  Notice of Removal, Adv. Doc. No. 1-3, at 6-7, ¶¶ 19-22.

[9]On July 2, 2007, Equivest-St. Thomas filed a voluntary Chapter 11 petition for relief in
the United States Bankruptcy Court for the District of the Virgin Islands.  Bankr. Pro. No. 07-
30011.  At that time, Equivest-St. Thomas filed a motion requesting that the Second Amended
Complaint be removed to the bankruptcy court pursuant to 11 U.S.C. § 1334(b) and § 1452, as
well as Rule 9027 of the Federal Rules of Bankruptcy Procedure, arguing that the causes of

(continued...)

In their Second Amended Complaint, Plaintiffs assert various tort claims against the Defendants. While this complaint includes seven counts, the Plaintiffs are pursuing just five claims,[10] i.e., common law fraud (Count 2), breach of fiduciary duty (Count 3), negligence (Count 4), and developer liability (Count 7), as well as a claim under the Virgin Island's Criminally Influenced and Corrupt Organizations Act" (hereinafter, "CICO") (Count 1).

In Count 3 (breach of fiduciary duty) and Count 4 (negligence) of the Second Amended Complaint, the Plaintiffs allege that the Defendants breached their duties as directors of the Associations[11] in numerous ways, including:

> a. fail[ing] to timely disclose and correct to [sic] Plaintiffs multiple latent problems and defects in the property, including widespread mold in interior walls, potentially creating health risks;

---

[9](...continued)
action set forth in the Second Amended Complaint were "core" proceedings against Equivest-St.Thomas. Notice of Removal, Adv. Pro. No. 07-3004, Adv. Doc. No. 1-3. The motion was granted by the district court on August 10, 2007. Order Granting Motion to Refer Cases Involving the Debtor Equivest St. Thomas, Inc. to the Bankruptcy Division, Adv. Pro. No. 07-3004, Adv. Doc. No. 1.

[10]Plaintiffs are no longer pursuing Count 5, Insuring Bluebeard's Castle, or Count 6, Theft of Insurance Proceeds. Transcript of 2/26/2010 Hearing, Adv. Doc. No. 396, at 27-28 ("[O]n the failure to insure cause of action and the theft of insurance proceeds, we are not persisting in that cause of action").

[11]The Second Amended Complaint alleges that the Defendants "undertook [and breached each of] the following duties to the Plaintiff-Associations:
> a. to act with utmost honesty, good faith, and fair dealing;
> b. to act with loyalty to the principals;
> c. to keep and render accurate accounts of the principals' affairs;
> d. to refrain from confusing or commingling the principals' funds with their own or with the funds of others;
> e. to affirmatively disclose all material information to the principals; and
> f. to act with due diligence and due care."
Second Amended Complaint, Adv. Doc. No. 346-2, at 54, ¶ 158 and Adv. Doc. No. 346-3, at 55, ¶ 159.

b.  fail[ing] to disclose and correct the scandalous accounting practices they and the Developer used and consequent Association losses;

c.  fail[ing] to undertake any collection actions against delinquent timeshare owners, with the result that the Plaintiff-Associations suffered massive, chronic shortfall of funds (and with the further result that Defendants increased their unoccupied unit week inventory for transient rental purposes);

d.  fail[ing] to charge and collect millions of dollars of dues on Developer-owned inventory . . . ;

e.  fail[ing], during the earlier years of the Associations' existence, to even maintain separate bank accounts for the Plaintiff-Associations, and condon[ing], approv[ing], and facilitat[ing] the commingling, misapplication, and misappropriation of Association funds on a massive scale;

f.  fail[ing], in the beginning, to require the Developer to contribute towards core property expenses under the "shared use agreement" provisions of the Declarations;

g.  later condon[ing], approv[ing], and facilitat[ing] arbitrary, oppressive, and unconscionable "shared expense" allocations, when the Developer finally acknowledged an obligation to pay *some* amount of this expense;

h.  consistently fail[ing] to obtain competitive bids for goods and services paid for by the Plaintiff-Associations, resulting in grossly inflated expenses, including massive insurance premiums;

i.  misallocating expenses of other resorts (or in certain cases the entire burden of expenses that ought to have been equitably split) to the Plaintiff-Associations;

j.  despite charging the Plaintiff-Associations many hundreds of thousands of dollars for accounting fees for their in-house accounting staff, the said Defendants:

> i) failed to comply with their statutory duty of maintaining books and detailed records of the receipts and expenditures affecting the common and limited common elements in a clear, comprehensive, and accurate manner (28 V.I.C. §919);
>
> ii) failed to account to the Associations for their expenditure of Associations' funds;
>
> iii) failed in their statutory duty to obtain an independent audit of Associations' finances;
>
> iv) failed to file income tax returns for the Associations until 2004; and
>
> v) failed, in all material respects, to comply with the

> American Institute of CPA's standards and
> guidelines for Common Interest Realty
> Associations[.]

Second Amended Complaint, Adv. Doc. No. 346-3, at 55-57, ¶ 160.  These allegations stem

from the respective written Declarations of Condominium and Bylaws of the Associations

(hereinafter, the "Declaration(s)").[12]  Statement of Contradicted Facts, Adv. Doc. No. 379, at

Exhibit 8(a)-(b), Declaration of Condominium Establishing Bluebeard's Castle Hilltop Villas III.

*See also* Affidavit of Peter Daniel Gianini, Adv. Doc. No. 156-1 *et. seq.* at Bluebeard's Castle

Hilltop Villas Declaration.  *See also* Opposition of Richard Fleck, Adv. Doc. No. 155-1 *et seq.* at

Master Deed and Declaration of Condominium Establishing Bluebeard's Castle Villas I.[13]

　　With respect to the CICO claim, Count 1 of the Second Amended Complaint, and the

claim of fraud, Count 2 of the Second Amended Complaint, the Plaintiffs contend that

"Cavanaugh and Reighley used their relationship with BCI and the Associations to perpetrate the

claims of mail fraud and embezzlement."[14]  Plaintiffs' Memorandum in Opposition to

Defendants' Motion for Summary Judgment (hereinafter, "Memorandum in Opposition"), Adv.

Doc. No. 378, at 26.  The Plaintiffs allege that the mail fraud occurred when the Defendants sent

---

[12]The three separate Declarations established Bluebeard's Castle Hilltop Villas I, Hilltop Villas, and Hilltop Villas III.

[13]"Plaintiffs' Statement of Contradicted Facts" (Adv. Doc. No. 379) was filed in response to the Defendants' "Statement of Uncontested Facts on Motion for Summary Judgment" (Adv. Doc. No. 370-29).  The facts material to the issue of statute of limitations are not disputed although there are disputes as to other matters which we are not addressing because we are determining this action based on the applicable statutes of limitations.  The factual evidence cited in the Statement of Contradicted Facts are references to exhibits that are not disputed.

[14]As explained by Plaintiffs' counsel, "in large part the CICO and the fraud [claims] are quite similar and, in essence, all of this alleges that Mr. Reighley and Mr. Cavanaugh failed to properly discharge a duty that they had and that they intentionally did it."  Transcript of 2/26/2010 Hearing, Adv. Doc. No. 396, at 28:8-12.

fraudulent budgets and maintenance fee invoices to the Association members through the mail. *Id.* at 27.  It is further alleged that the Defendants embezzled these funds.  *Id.*

Count 7 of the Second Amended Complaint asserts a tort claim of developer liability for historic assessments.  Counsel for the Plaintiffs concede that this is essentially a damages statement.  Transcript of 2/26/2010 Hearing, Adv. Doc. No. 396, at 28:6-8.  ("[T]he way I sort of called attention to liability for assessments, that's really a damages statement.  That fits under breach of fiduciary duty, CICO, or negligence").

Defendants have presented this Motion for Summary Judgment to dismiss all of Plaintiffs' claims.  In the event that summary judgment is granted, the Defendants have requested "that at such time as the Court enters an order granting summary judgment in their favor on all claims, the Court include in the order a provision ordering that the Associations be required forthwith to indemnify them for the attorneys fees and costs that they were obliged to incur as a result of the actions of the Associations" based on Article XV of the Bylaws of each Association, which "requires that the Associations indemnify its [sic] board members and officers against any expense reasonably incurred by them except where they shall be finally adjudged in a lawsuit to be liable for or guilty of gross negligence or willful misconduct." Motion for Summary Judgment, Adv. Doc. No. 370-25, at Memorandum in Support of Motion for Summary Judgment on All Claims (hereinafter, "Memorandum in Support"), at 27-29. Before reaching the substantive merits of the Motion for Summary Judgment, the court must first consider Defendants' argument that the applicable statutes of limitations, under the law of the United States Virgin Islands, bar this action.

**<u>Summary Judgment Standard</u>**

Rule 56(c) of the Federal Rules of Civil Procedure provides that a moving party is entitled to summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A motion for summary judgment can be defeated by the non-moving party if evidence is produced to create a genuine issue of material fact. *El v. Southeastern Pennsylvania Transp. Authority (SEPTA)*, 479 F.3d 232, 238 (3d Cir. 2007) (citing *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 637 (3d Cir. 1993)). However, if the movant has satisfied its burden under Rule 56(c), the non-moving party "may not rely merely on allegations or denials in its own pleading; rather its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). "Summary judgment may not be granted . . . if there be an issue presented as to existence of any material fact; and all doubts as to existence of a genuine issue as to a material fact must be resolved against the party moving for summary judgment." *First Pennsylvania Banking & Trust Co. v. United States Life Ins. Co.*, 421 F.2d 959, 962 (3d Cir. 1969) (citing *Sarnoff v. Ciaglia*, 165 F.2d 167 (3d Cir. 1947)). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## **Statute of Limitations**

A motion for summary judgment can be made on the affirmative defense of statute of limitations. For example, in *Whitaker v. Merrill Lynch, Pierce Fenner, & Smith, Inc.*, 1997 V.I. LEXIS 8 (Terr. V.I., April 21, 1997), the defendants filed a motion for summary judgment on the ground that plaintiff's action was barred by the applicable statute of limitations. In that case,

with respect to the plaintiff's claims alleging fraud, negligence, and breach of fiduciary duty, the

court applied the Virgin Island's two-year limitations period for injuries resulting from tortious

conduct and determined that those claims were time-barred and should be dismissed, thereby

granting, in part, the defendants' motion for summary judgment.  *See also Four Bros. Boat*

*Works, Inc. v. Tesoro Petroleum Companies, Inc.*, 217 S.W.3d 653, 663 (Tex. App. Houston 14th

Dist. 2006) ("When a defendant moves for summary judgment on the affirmative defense of

limitations, it has the burden to conclusively establish that defense, including the accrual date of

the cause of action").

Under the law of the Virgin Islands, tort claims must be commenced within two years

from the accrual of the cause of action.  5 V.I.C. § 31(5)(A) (establishing a two-year statute of

limitations to "[a]n action for . . . any injury to the person or rights of another not arising on

contract and not [otherwise] enumerated").  *See also Pemberton Sales & Serv., Inc. v. Banco*

*Popular de Puerto Rico*, 877 F. Supp. 961, 968 n.18 (D.V.I. 1994).  CICO claims are subject to a

five-year statute of limitations period.  14 V.I.C. § 607(h).  *See also Charleswell v. Chase*

*Manhattan Bank, N.A.*, 2009 U.S. Dist. LEXIS 54519, *46 (D.V.I. 2009).

In certain instances, the running of the statute of limitations period may be tolled by the

application of such doctrines as the discovery rule or equitable tolling.

### Discovery Rule

Generally, "a statute of limitations begins to run upon the occurrence of the essential

facts which constitute the cause of action."  *Simmons v. Ocean*, 544 F. Supp. 841, 843 (D.V.I.

1982) (quoting *Wilcox v. Plummer's Executors*,(1830)).  Under the law of the Virgin Islands,

"application of the equitable 'discovery rule' tolls the statute of limitation[s] when the injury or

its cause is not immediately evident to the victim." *Joseph v. Hess Oil*, 867 F.2d 179, 182 (3d

Cir. 1989). Thus, the discovery rule provides that the statute of limitations period begins to run

when the "plaintiff has discovered, or by exercising reasonable diligence, should have

discovered (1) that she has been injured, and (2) that this injury has been caused by another

party's conduct." *Boehm v. Chase Manhattan Bank*, 2002 U.S. Dist. LEXIS 25238, *9 (citing

*New Castle County v. Halliburton NUS Corp.*, 111 F.3d 1116, 1124 (3d Cir. 1997)). The

discovery rule is to be applied using an objective reasonable person standard. *Charleswell v.*

*Chase Manhattan Bank, N.A.*, 2009 U.S. Dist. LEXIS 54519, *35 (D.V.I. 2009) (citing *In re*

*Tutu Wells Contamination Litigation*, 909 F. Supp. 980, 984 (D.V.I. 1995)). The Court of

Appeals for the Third Circuit explained the requisite "reasonable diligence" in *D.D. v. Idant*

*Laboratories*, 2010 U.S. App. LEXIS 6815, *8-9 (3d Cir. 2010):

> Reasonable diligence is an objective test, but it is also "sufficiently
> flexible . . . to take into account the difference[s] between persons
> and their capacity to meet certain situations and the circumstances
> confronting them at the time in question." *Fine v. Checcio*, 870
> A.2d 850, 858 (Pa. 2005) (citations omitted). Demonstrating
> reasonable diligence requires a plaintiff to establish that she
> displayed "those qualities of attention, knowledge, intelligence,
> and judgment which society requires of its members for the
> protection of their own interests and the interests of others."
> Wilson [v. El-Daief], 964 A.2d [354], 363 n.6 [(Pa. 2009)]
> (citation omitted).

See also *Burton v. First Bank of Puerto Rico*, 2007 V.I. LEXIS 19 (V.I. Super, July 19,2007)

(applying an objective, rather than a subjective, standard when determining whether an

individual demonstrated reasonable diligence in ascertaining the source of his injury).

**Equitable Tolling**

"Equitable tolling may be appropriate if (1) the defendant has actively misled the

plaintiff, (2) if the plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." *Kocian v. Getty Refining & Marketing Co.*, 707 F.2d 748, 753 (3d. Cir. 1983)[15] (citing *School District of City of Allentown v. Marshall*, 657 F.2d 16, 20 (3d Cir. 1981)). Courts in the Third Circuit have also cautioned that the restrictions on equitable tolling are to be "scrupulously observed." *Getty Refining*, 707 F.2d at 753 (quoting *Marshall*, 657 F.2d at 19). The burden of proving that equitable tolling is warranted lies with the plaintiff. *Podobnik v. U.S. Postal Service*, 409 F.3d 584, 591 (3d Cir. 2005) (citing *Courtney v. La Salle University*, 124 F.3d 499, 505 (3d Cir. 1997)).

"Like the discovery rule, equitable tolling requires the plaintiff to demonstrate 'that he or she could not, by the exercise of reasonable diligence, have discovered essential information bearing on his or her claim.'" *In re Mushroom Transp. Co., Inc.*, 382 F.3d 325, 339 (3d Cir. 2004) (quoting *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1390 (3d Cir. 1994)). Generally, determinations as to whether a plaintiff "failed as a matter of law to exercise reasonable diligence for purposes of the discovery rule and equitable tolling . . . are typically within the [fact finder's] province unless 'the facts are so clear that reasonable minds cannot differ . . . .'" *In re Mushroom*, *supra* at 339 (quoting *Melley v. Pioneer Bank, N.A.*, 834 A.2d 1191, 1201 (Pa. Super. 2003)). Excusable neglect is insufficient to invoke equitable tolling. *New Castle County v. Halliburton NUS Corp.*, 111 F.3d 1116, 1126 (3d Cir. 1997) (citing *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 96 (1990)).

---

[15]Superseded by regulation on other grounds. *See Colgan v. Fisher Scientic Co.*, 935 F.2d 1407 (3d Cir. 1991).

## Adverse Domination

The doctrine of adverse domination acts to toll the statute of limitations "for as long as a corporate plaintiff is controlled by the alleged wrongdoers" and "is based on the theory that the corporation which can only act through the controlling wrongdoers cannot reasonably be expected to pursue a claim which it has against them until they are no longer in control." *Resolution Trust Corp. v. Farmer*, 865 F. Supp. 1143, 1151 (E.D. Pa. 1994).

Courts have recognized two variations of the adverse domination doctrine, i.e., the majority test and the complete domination test. *Harmelin v. Man Fin., Inc.*, 2007 U.S. Dist. LEXIS 67668, *38 n.9 (E.D. Pa., Sept. 12, 2007). The majority test requires the plaintiff to demonstrate "that a majority of board members were wrongdoers during the period plaintiff seeks to toll the statute of limitations" and the complete domination test demands that the plaintiff demonstrate "that the officers/directors charged with wrongdoing exercise full, complete and exclusive control over the corporation (although they may not necessarily have constituted a majority.)" *Id.* (citations omitted).

## Indemnification

"Indemnity contracts are to be interpreted based on ordinary contract law; strict construction against the party benefiting [*sic*] from the clause is applied only where one seeks indemnity from his own negligence." *Adams v. St. Croix Basic Servs.*, 2002 V.I. LEXIS 29 (Terr.V.I., Sept. 27, 2002) *2 n.3 (citing *SmithKline Beecham Corp. v. Rohm & Haas Co.*, 89 F.3d 154, 154 n.3 (3d Cir. 1996)). Courts must consider not only the context in which the contract was made, but also the parties' intent in drafting the contract provision. *Adams*, *supra*, at *2.

13

**<u>Discussion</u>**

***Discovery Rule***

The Plaintiffs contend that there is a material dispute of fact as to when the statute of
limitations period accrued.  Specifically, the Plaintiffs argue that there is a material dispute as to
when they knew, or should have known, of their injury from the Developer's failure to pay
maintenance fees on Developer-owned units.

The Plaintiffs assert that they "did not discover nor reasonably should have discovered . .
. the wrongs they allege against [the Defendants]" until 2003, "shortly after the developer lost
control of some of the Associations' boards and the new independent directors demanded an
accounting."  Plaintiffs' Supplemental Memorandum on Statute of Limitations in Opposition to
Defendants' Motion for Summary Judgment (hereinafter, "Supplemental Memorandum in
Opposition"), Adv. Doc. No. 394, at 4 and 5.  *See also* Memorandum in Opposition, Adv. Doc.
No. 378-18, Exhibit N, Deposition of Richard Fleck, at 33-35

On the other hand, Defendants argue Plaintiffs' claims are barred by the applicable
statutes of limitations and, as such, that they are entitled to summary judgment and dismissal of
all claims.  The Defendants contend that the statutes of limitations began to run upon the
Defendants' termination by Kosmas on March 30, 1999, and that, at the latest, Plaintiffs
discovered their loss in late 1999 when a letter from "Bluebeard's Castle" was sent to the
membership of the Associations by Equivest Finance or one of its affiliates (hereinafter, the
"Letter").  The Letter states that:

> The Board of Directors for the owner associations of Bluebeard's
> Castle met on October 20 and 21, 1999 to review the operations
> and budgets for the year 2000.  For the first time in recent history,
> Bluebeard's Castle Owner Associations will be operating on a

> balanced budget with the developer paying an operating
> assessment for each of the unsold intervals, just as the owners do.
> This allows management to begin to operate and maintain the
> properties on a scheduled, instead of deferred, basis.

Motion for Summary Judgment, Adv. Doc. No. 370-8, at Exhibit 7 to Affidavit of Lloyd De Vos.

Although it states that the meeting occurred on October 20 and 21, 1999, the Letter itself is

undated.  Plaintiffs argue that, even if the Letter was mailed sometime between late October and

December 31, 1999, it was insufficient to constitute notice of the injury.[16]  Memorandum in

Opposition, Adv. Doc. No. 378.

It is undisputed that Defendants Cavanaugh and Reighley were each terminated by

Kosmas on March 30, 1999.  Motion for Summary Judgment, Adv. Doc. No. 370-25, at

Memorandum in Support, at 3; Motion for Summary Judgment, Adv. Doc. No. 370-18, at

Exhibit 2 to Affidavit of John H. Cavanaugh; Motion for Summary Judgment, Adv. Doc. No.

370-27 at Exhibit 1 to Affidavit of William F. Reighley.  This occurred just days before the sale

of Kosmas to Equivest Finance was finalized.  After this date, neither Cavanaugh nor Reighley

had any further role with the Plaintiffs, the Associations or the Developer.[17]  The parties

---

[16]In their Supplemental Memorandum in Opposition, Plaintiffs argue that "the letter is ambiguous and does not inform the membership that the unpaid developer's maintenance fees were mandatory payments rather than discretionary payments and the letter represents . . . that Equivest funded the entire maintenance catch-up for the owners, and balanced the budget, which would reasonably cause the owners to believe they had suffered no damages."  Adv. Doc. No. 394, at 3.  *See also*, Memorandum in Opposition, Adv. Doc. No. 378, at 30-32.

[17]Each Defendant's termination letter states that "[e]ffective immediately, [he] must cease to hold [himself] out as [Kosmas'] agent, enter into any contracts on [Kosmas'] behalf, or otherwise serve as [Kosmas'] employee, agent, or representative in any capacity."  Motion for Summary Judgment, Adv. Doc. No. 370-18 at Exhibit 2 to Affidavit of John H. Cavanaugh; Motion for Summary Judgment, Adv. Doc. No. 370-27 at Exhibit 1 to Affidavit of William F. Reighley.

acknowledge that, based on the date of termination, Plaintiffs' complaint, on its face, appears to

be barred by the applicable statute of limitations periods.[18]  There is no evidence that the

Defendants had any involvement with the Resort, the Developer or the Associations' Boards

after their terminations on March 30, 1999,[19] and because this action was not commenced until

November 11, 2005, the limitations period for all counts has expired unless application of an

exception extends the period.  To overcome the expiration of the statutes of limitations, the

Plaintiffs urge the court to apply the discovery rule to determine that the statute of limitations

---

[18]This was acknowledged by the Virgin Islands Superior Court in Judge Hodge's
Memorandum and Order: ". . . [T]he second amended complaint appears to be facially time-
barred."  Notice of Superior Court Filings, Adv. Doc. No. 377, at 10 of Memorandum and Order.

[19]Under the Declaration of each condominium, members of the board of directors were
required to be members of the Association.  Section 4.E. of the Declaration of each
condominium provided that "[a]ll persons elected to the Board of Directors shall be members of
the Association."  *See* Statement of Contradicted Facts, Adv. Doc. No. 379, at Exhibit 8(a),
Declaration of Condominium Establishing Bluebeard's Castle Hilltop Villas III, ¶ 4.E.  *See also*
Affidavit of Peter Daniel Gianini, Adv. Doc. No. 156-1, at Bluebeard's Castle Hilltop Villas
Declaration, ¶ 4.E.  *See also* Opposition of Richard Fleck, Adv. Doc. No. 155-1, at Master Deed
and Declaration of Condominium Establishing Bluebeard's Castle Villas I, ¶ 4.E.
        Article IV, Section 1 of the Bylaws of each condominium, which are attached as Exhibit
D to each Declaration, provided the same: "All Directors, except those designated by the
Developer, shall be members of the Association."  A person who was an officer or employee of a
corporation which owned a unit week and was a member of the Association could be elected as a
director.  In individual sworn statements, Defendants Cavanaugh and Reighley each averred that,
"[o]nce [his] employment with BCI was terminated and [he] was no longer an officer of BCI,
[he] no longer qualified to serve as a director and could not and did not serve as a director of any
of the [A]ssociations."  Motion for Summary Judgment, Adv. Doc. No. 370-16, Affidavit of John
H. Cavanaugh, at 5, ¶ 25; Motion for Summary Judgment, Adv. Doc. No. 370-26, Affidavit of
William F. Reighley, at 3, ¶ 10.  Similarly, each Defendant averred in his own affidavit that, after
receiving his termination letter from Kosmas on March 30, 1999, he was barred from the Resort
and that, "[s]ince that time, [he has] had nothing to do with the management and operation of
[the Resort]."  Motion for Summary Judgment, Adv. Doc. No. 370-16, Affidavit of John H.
Cavanaugh, at 2-3, ¶ 11; Motion for Summary Judgment, Adv. Doc. No. 370-26, Affidavit of
William F. Reighley, at 2, ¶ 6. These facts, as cited from the Declarations, are not contested.

periods did not begin to run until 2003.[20]

When seeking application of the discovery rule, the burden is on the Plaintiffs to justify

its application.  *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 487 (3d Cir. 1985).

We find that the Plaintiffs have failed to meet this burden and that, based on an objective

"reasonable diligence" standard, the facts of this case do not support application of the discovery

rule.  While the Plaintiffs assert that they were unable to discover their injury until 2003, they

fail to provide sufficient evidence to support such an assertion.

First, the record indicates that there is no dispute as to the fact that "Cavanaugh and

Reighley had nothing to do with the business from 1999 on" and that "their involvement had to

have predated 1999."[21]  Transcript of 2/26/2010 Hearing, Adv. Doc. No. 396, at 40:1-6.  The

Plaintiffs assert that, although Defendants Cavanaugh and Reighley were terminated as of the

end of March, 1999, they were unable to discover the injury caused by the Defendants' alleged

misconduct until 2003 when the Developer no longer had control over the Associations' Boards.

In response to the Defendants' contention that, at the latest, the Plaintiffs should have known of

any alleged injury by late 1999 after Equivest Finance mailed the Letter to the Associations'

---

[20]The year 2003 represents the alleged time "shortly after the developer lost control of
some of the Associations' boards and the new independent directors demanded an accounting."
Plaintiffs' Supplemental Memorandum on Statute of Limitations in Opposition to Defendants'
Motion for Summary Judgment, Adv. Doc. No. 394, at 4.  *See also* Memorandum in Opposition,
Adv. Doc. No. 378, Exhibit N, Deposition of Richard Fleck, at 33-35.

[21]Notably, Defendants Cavanaugh and Reighley were sued individually in their capacity
as directors or officers of the Plaintiffs.  *See, e.g.*, Second Amended Complaint, Adv. Doc. No.
346-3, at 54, ¶ 156 .  (Note: the docket entry states that Attachment 2 is pages 28-54 but these
pages are actually Attachment 3); Transcript of 2/26/2010 Hearing, Adv. Doc. No. 396, at 21:12-
19 and 74:14-17.  Therefore, the alleged misconduct of these Defendants necessarily occurred
during their tenure as directors and officers of the Associations, which ended on March 30, 1999.

membership, the Plaintiffs assert that the Letter was too ambiguous to constitute notice of injury. *See* note 16, *supra*. We find that the Letter is not ambiguous. However, even if the Letter was ambiguous, it certainly was sufficient to cause a reasonable owner to ask: "Huh? What does that mean?" and to inquire further upon its receipt. The Letter is clear that, for "the first time in recent history" the Associations will have (1) a balanced budget; (2) a developer that pays an operating assessment, and (3) scheduled, rather than deferred, maintenance. That information at the very least suggests that none of the three events was true in the recent past, raising the questions: "Why not?" or "Who was responsible for prior neglect of these duties?"

Second, Plaintiffs knew that the "Developer" of the Resort could not and did not include Defendants Cavanaugh and Reighley as of March 30, 1999.[22] At that time or at any time thereafter, they could have demanded an accounting, taken steps to review the books and records, and/or questioned Cavanaugh and Reighley's actions. They did nothing, although they had opportunity to do so.

Third, there is no evidence of record suggesting that the Plaintiffs exercised reasonable diligence in discovering their injury. As stated by the court on the record during the February 26, 2010, hearing on this Motion for Summary Judgment, "there is no information as to why [the Plaintiffs] couldn't have gotten an accountant's report in 1999, or 1998 or in 2000." Transcript of 2/26/2010 Hearing, Adv. Doc. No. 396, at 37:22-24. Since that hearing in February, 2010,

---

[22]As explained at various times in this Opinion, Cavanaugh and Reighley were terminated by Kosmas Group International, Inc. Kosmas then sold all of its interests in Castle Holdings, BCI, and Castle Acquisitions to Equivest Finance in late March 1999. In 2001, Equivest Finance merged two subsidiaries - BCI and Castle Acquisitions - to form the Equivest-St. Thomas corporation. Equivest-St. Thomas became, and through the relevant time remained, the Developer as the successor to BCI.

Plaintiffs have cited no additional evidence regarding their activities from 1999 to 2003.[23]

Therefore, there is no evidence that the Plaintiffs exercised the necessary due diligence in

discovering their injury that is required for application of the discovery rule. Thus, the Plaintiffs

have not established that the discovery rule is applicable. It remains true that all members of the

Associations' boards, whether or not the Defendants had majority control over the boards, have a

fiduciary duty to the Associations. Thus, even if the Defendants, who are sued in their

individual capacities, controlled the board prior to 1999, as alleged by the Plaintiffs, they had no

control whatsoever after March 30, 1999, and nothing prevented any of the members of the

Associations or board members from taking action or seeking a remedy.[24] *See* Transcript of

2/26/2010 Hearing, Adv. Doc. No. 396, at 43.

Based on this analysis, we find that the Plaintiffs have not met their burden regarding the

discovery rule and decline the request to apply the discovery rule in this case.[25] The statute of

---

[23]On March 5, 2010, Plaintiffs filed a Motion for Leave to File Supplemental Memorandum on Statute of Limitations In Opposition to Defendants' Motion for Summary Judgment. Adv. Doc. No. 391. This motion was granted (Adv. Doc. No. 393) and Plaintiffs' Supplemental Memorandum was filed at Adv. Doc. 394. This supplemental memorandum did not include any arguments that Plaintiffs exercised any due diligence in discovering the injury allegedly caused by Defendants' conduct and did not provide any additional evidence of such due diligence.

[24]*See* note 19 and accompanying text, *supra*.

[25]The court notes a recent decision of the United States Supreme Court in *Merck & Co. v. Reynolds*, ___ U.S. ___, 130 S. Ct. 1784 (2010), where the Court held that the applicable statute of limitations did not begin to run until the plaintiff either actually discovered the facts or until a hypothetical reasonably diligent plaintiff would have discovered the facts constituting the cause of action. The Court based its holding on the statutory language of 28 U.S.C. § 1658(b) which provided that a "private right of action . . . involving a claim of fraud, deceit, manipulation or contrivance in contravention of a regulatory requirement concerning the securities laws . . . may not be brought later than the earlier of (1) 2 years after the *discovery of the facts constituting the violation*; or (2) 5 years after such violation." 28 U.S.C. § 1658(b) (emphasis added). The Court
(continued...)

limitations began to run as to these actions against Cavanaugh and Reighley individually when

Defendants Cavanaugh and Reighley were terminated as of March 30, 1999.[26]

The Plaintiffs also argue that, even if Counts 2, 3, 4 and 7 are found to be untimely,

Count 1, the CICO claim, is timely.  This argument is based on the theory that the five-year

statute of limitations applicable to the CICO claim began to run when the Letter was actually

received by the Associations' members, rather than when these members realized its significance

in indicating possible injury.  Because the Letter was not dated and was written after October 21,

1999,[27] the Plaintiffs contend that the letter may not have been received by the Associations'

members until early January, 2000.[28]  However, there is no evidence as to any date on which any

---

[25](...continued)
found that the discovery necessary to begin the tolling of this statute of limitations had to include
discovery of the facts constituting the violation under the Securities Exchange Act.  This case
can be distinguished from the case at bench, as the statutes of limitations applicable in our case
do not contain any language requiring "discovery of the facts constituting the violation."  The
Supreme Court acknowledged this distinction in the *Merck* opinion, by emphasizing that the
*Merck* case deals with a statute, i.e., § 1658(b), and not a court-created exception to a statute.
*Cf.*, *Malone v. Nuber*, 2010 U.S. Dist. LEXIS 89408 (W.D. Wash. Aug. 30, 2010) (rejecting
Plaintiffs argument that the statute of limitations period does not begin to run until the plaintiff
discovers or reasonably should have discovered the facts constituting the violation and finding
that the *Merck* decision is inapplicable because plaintiffs' case does not include a Rule 10b-5
violation under the Securities Exchange Act).

[26]We note that, even if the court were to apply the discovery rule and accept a reasonable
delay in discovering the injury, Plaintiffs' four year delay in discovering the injury is not within
the range of what is reasonable.  This is an action against Defendants Cavanaugh and Reighley
in their individual capacities.  Thus, once each Defendant was removed from the board of
directors, there was an opportunity for all of the board members to investigate.

[27]Based on the content of the Letter, neither party disputes that the letter was written
sometime after October 21, 1999.

[28]Plaintiffs' Supplemental Memorandum in Opposition states that "[the Letter] likely was
not received by the membership until sometime in early January, 2005."  Adv. Doc. No. 394, at
4.  The lawsuit against Defendant Cavanaugh was first filed in 2004.  Therefore, the court

(continued...)

member actually received the letter.  For purposes of this Opinion, we accept the Plaintiffs'

assertion that it was received as late as January, 2000.  The suit against Defendant Cavanaugh

was initiated on November 11, 2004, and the suit against Defendant Reighley was initiated on

January 4, 2005.  The Plaintiffs assert that, as such, the cause of action against each Defendant

was brought within the applicable five year statute of limitations for the CICO claim.  However,

as explained previously, the Defendants had no involvement with the Resort or the Associations'

Boards after March 30, 1999.  Therefore, for the statute of limitations to start running at a time

subsequent to that date, the court would have to apply the discovery rule, which requires that the

Plaintiffs exercise reasonable diligence in discovering their injury.  The court has found that

there is no evidence of record to indicate that the Plaintiffs did anything at all to exercise

diligence.  Even if the Letter was received by the Plaintiffs in January, 2000, the Plaintiffs had

multiple opportunities to inquire into the Associations' budgets and the conduct of the

Defendants before the statute expired on March 30, 2004, but they did not.  Plaintiffs' receipt of

the Letter is not the event that triggered the need to perform due diligence.  Instead, the receipt of

the Letter only confirmed the need for due diligence which could have been performed as of the

time Defendants Cavanaugh and Reighley were terminated on March 30, 1999.  Therefore, the

CICO action against the Defendants is barred by the statute of limitations and the discovery rule

does not apply.[29]

---

[28](...continued)
assumes that "January, 2005" was a typographical error in the Supplemental Memorandum in
Opposition, and that the intent was to state "early January, 2000."

[29]The Second Amended Complaint raises Count I, the CICO claim, against "Individuals
Defendants Cavanaugh and (at limited times) Reighley, acting within the course and scope of

(continued...)

*Equitable Tolling*

Next, the Plaintiffs assert that, even if the discovery rule does not apply, the doctrine of equitable tolling does.[30]  Although applied sparingly,[31] equitable tolling has been scrupulously applied by the Third Circuit in three situations: (1) if "the defendant has actively misled the Plaintiff, (2) if the plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." *Kocian v. Getty Refining & Marketing Co.*, 707 F.2d 748, 753 (3d Cir. 1983) (citations omitted). The Plaintiffs point to the second situation and allege that, in some extraordinary way, they have been prevented from asserting their rights.  The "extraordinary circumstance" cited by the Plaintiffs is the continuing Developer control of the Associations' boards, of which the Plaintiffs allege the Defendants were a part.  The Plaintiffs state that Richard Fleck, a member and eventual board member of one or more of the Associations, testified to this alleged Developer control in his deposition.  *See* Memorandum in Opposition, Adv. Doc. No. 378, at Exhibit N,

---

[29](...continued)
their employment and in furtherance of their employer's interests with Bluebeard's Castle, Inc., Castle Acquisitions, Inc., Castle Holdings, LLC, and Equivest Finance, Inc."  Adv. Doc. No. 346-1, at 24, ¶ 75(a).  ;However, even if this Count is not brought against the Defendants individually in their capacity as directors and officers of the Associations' Boards and is, instead, brought against them individually in their capacity as employees of the Developer, the five-year statute of limitations has still expired.  As thoroughly explained, *supra*, Defendants Cavanaugh and Reighley had no further association with any of the entities named in ¶ 75 of the Second Amended Complaint after their termination on March 30, 1999 - the date on which the statute of limitations began to run.

[30]The discovery rule is applied to determine the start of the running of the statute of limitations.  The doctrine of equitable tolling works to extend the applicable statute of limitations period.

[31]"Federal courts invoke the doctrine of equitable tolling 'only sparingly', . . . ."  *U.S. v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1988) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)).

Deposition of Richard Fleck, at 33-35.  Fleck testified that the owners "were trying to get control

of the boards away from the developer."[32]  *Id.* at 31:20-24.  However, the evidence of purported

Developer control cited by the Plaintiffs does not demonstrate a situation that rises to the level of

"extraordinary circumstances."[33]  Assuming, *arguendo*, that the Associations' boards were

controlled by the Developer until 2003, the uncontroverted evidence establishes that there were

independent board members during the time Defendants Cavanaugh and Reighley were on the

board.  Each year, a Notice of Annual Meeting was distributed to the Associations' members.

These notices included biographies of board members and/or board candidates.  For example, in

the Notice of Annual Meeting of Bluebeard's Castle Villas I Condominium Association that was

distributed prior to the October 1993 meeting, the Biography of Board Members section includes

Mr. Richard Celata and describes him as a "timeshare villa owner since 1983 and a Board

member since 1989."  Motion for Summary Judgment, Adv. Doc. No. 370-21 at Affidavit of

John H. Cavanaugh, Exhibit 4.  (Note:  the docket entry states that Attachment 20 is Exhibit 4

---

[32]The court notes that the pages of Mr. Fleck's deposition provided to us in Exhibit N of
the Plaintiffs' Memorandum in Opposition are incomplete.  For example, on page 31 of the
transcript, Mr. Fleck was asked questions regarding the events leading up to his desire to become
a member of the Villas I Board of Directors.  His answer continues on to page 32, which was not
provided to the court.  Therefore, without complete answers to specific series of questions, the
court can address only the evidence provided.

[33]"Absent a showing of intentional inducement or trickery by the defendant, a statute of
limitations should be tolled only in the 'rare situation where equitable tolling is demanded by
sound legal principles as well as the interests of justice."  *United States v. Midgley*, 142 F.3d
174, 179 (3d Cir. 1998).  We find that there is no evidence in this case to suggest "intentional
inducement or trickery" by the Defendants.  Assuming without deciding that Plaintiffs' assertion
that the Developers controlled the board is true and that Cavanaugh and Reighley were no longer
involved as of March 30, 1999, Plaintiffs knew all of that information at all relevant times.
Thus, actions against Defendants Cavanaugh and Reighley individually could have been
explored before 2003.

but Exhibit 4 is actually Attachment 21).  In the Notice of Annual Meeting of Bluebeard's Castle

Hilltop Condominium Association distributed prior to the October 1994 meeting at which the

1995 Board would be elected, the Biography of Board Members includes Ms. Sandy Reen, a

timeshare owner since 1989 who was, in 1994, residing in Sarasota, Florida.  Motion for

Summary Judgment, Adv. Doc. No. 370-22 at Affidavit of John H. Cavanaugh, Exhibit 5.

(Note:  the docket entry states that Attachment 21 is Exhibit 5 but Exhibit 5 is actually

Attachment 22.)  This same Notice of Annual Meeting also includes the biography of Mr. Rob

Schlenker, a timeshare owner since 1989 who, in 1994, lived in Savannah, Georgia.  No

evidence was presented to indicate that Mr. Celata, Mr. Schlenker or Ms. Reen had any prior

affiliation with or allegiance to Defendants Cavanaugh and Reighley.[34]

Furthermore, even if only one independent board member existed, that board member

still had responsibilities and fiduciary duties to the Associations.  John Enrietto, another

Association member and board candidate, admits this in his deposition:

> Q: . . . Will you agree with me that during the period prior to 1999
> individuals other than Mr. Cavanaugh, Mr. Reighley, Mr. Graves
> and Mr. Sullivan served on the boards of the three associations that
> are plaintiffs in this case?
> A: Yes.

---

[34]Other examples persist throughout the Notice of Annual Meeting memorandum for the
other years at issue in this current action.  The notices are attached as exhibits to the Affidavit of
John H. Cavanaugh in Support of Motion for Summary Judgment.  We note that the Notice of
Annual Meeting announcing the October 25, 1995, meeting did not include a page containing
candidate biographies even though the first page of the Notice of Annual Meeting indicated that
such a page was to follow.  Motion for Summary Judgment, Adv. Doc. No. 370-23 at Affidavit
of John H. Cavanaugh, Exhibit 6.  (Note:  the docket entry states that Attachment 22 is Exhibit 6
but Exhibit 6 is actually Attachment 23.)  We also note that a Notice of Annual Meeting for each
year implicated in this adversary proceeding were not included as exhibits.  In total, such notices
were provided for the October meetings held in the following years: 1987, 1993, 1994, 1995, and
1996.

> Q: Will you agree with me that each of those individuals who
> served as directors had fiduciary duties as directors?
> A: Yes.
> Q: Will you agree with me that each of those individuals had a
> duty to inquire into the financial affairs of the association in their
> capacity as directors of the association?
> A: Yes.
> Q: Do you know whether any of them ever made such an inquiry?
> A: I don't know.
> Q: Have you ever asked anyone to see the financial records of
> Bluebeard's Castle, Inc. for periods prior to 1999?
> A: Yes.
> Q: Who did you ask?
> A: Fairfield was just coming in, so I'm not sure of the dates, but
> there were two women that took care of the books . . . .
>
>         And the only thing they said they were allowed to show us
> were registers which listed checks and deposits.  No balance sheet,
> no income statement, no break down of who paid how much, no
> delinquent owner list, which I did ask about and never received.  I
> was not a director at the time, it was when I was wanting to be a
> director and wanting to know what was going on, it just seemed
> uncomfortable. . . .

Motion for Summary Judgment, Adv. Doc. No. 370-4, at Exhibit 2, Deposition of John Enrietto,

at 46-48.  Notably, when Mr. Enrietto was not provided certain records and/or information, he

did nothing to inquire or pursue the matter further.  There is no evidence that anyone prevented

him from pursuing the matter by intentional inducement, trickery, or anything else.  At a

minimum, the "uncomfortable" situation as described by Mr. Enrietto in his deposition should

have prompted further inquiry at the time.  Thus, the opportunity to demand an accounting, as

well as to examine the books and records, existed both prior to and after the Defendants'

termination on March 30, 1999.

        After review of the record, the court finds that the Plaintiffs have failed to produce

evidence sufficient to create a genuine issue of material fact as to whether they have been

prevented from asserting their rights in an extraordinary way by these Defendants.

Similar to the discovery rule, the doctrine of equitable tolling is unavailable unless the plaintiff has exercised due diligence in pursuing his claim.  As we determined with regard to the discovery rule, we again find nothing in the record to establish that the Plaintiffs in this case exercised requisite due diligence.[35]

Also with regard to the doctrine of equitable tolling, Plaintiffs have directed the court's attention to the July 7, 2006, Memorandum and Order issued by the Honorable Rhys S. Hodge of the Superior Court of the Virgins Islands.  Notice of Filing of Superior Court Filings, Adv. Doc. No. 377.  The matter before Judge Hodge was Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint for various tort and contract claims, as well as CICO claims.[36]  This motion was granted in part and denied in part by Judge Hodge.  At the February 26, 2010, hearing before us regarding Defendants' Motion for Summary Judgment, the Plaintiffs argued that Judge Hodge ruled on the same matters before us now.  *See* Adv. Doc. No. 396, Transcript of 2/26/2010 .

In pertinent part, Judge Hodge's Memorandum and Order explains that:

---

[35]Citing *Valdez ex rel. Donely v. U.S.*, 518 F.3d 173, 182 (2d Cir. 2008), Plaintiffs argue that equitable tolling does not always assume that a defendant took actions to prevent the plaintiff from suing.  First, this case was decided by the Court of Appeals of the Second Circuit, which is not precedent in the case before us.  Second, while the *Valdez* court explained that equitable tolling "does not assume a wrongful–or any–effort by the defendant to prevent the plaintiff from suing," the court expressly stated that equitable tolling is only available "if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Id.*  Thus, even if we were to apply the standard elucidated in *Valdez*, the standard was not met. Here, we have no evidence that the Plaintiffs exercised *any* diligence other than Mr. Enrietto's sole and unpursued request for financial information, thus failing to meet the *Valdez* standard of "all diligence."

[36]The claims raised before the Superior Court of the Virgin Islands are the same claims currently before the bankruptcy court.

26

In support of the complaint, the Plaintiffs have asserted that they were unable to obtain vital information bearing on the existence of some claims because of Defendants deliberate concealment of adverse material information.  *See* Pls. Compl. ¶¶ 225-228. Plaintiffs have alleged that Defendants failed to provide adverse financial records through prolonged fraudulent accounting practices calculated to deceive, and, as a result, the statute of limitations is equitably tolled.  A review of the record indicates that Plaintiffs received accurate accounting information in 2003 for the first time when a forensic accountant reviewed the financial records and found numerous irregularities in the Defendants accounting process.  Moreover, Plaintiffs have offered evidence, and the record indicates, that the Defendants knew of alleged financial irregularities, which they concealed from the Plaintiffs. To reiterate the Third Circuit's position with respect to allegations of fraudulent concealment the proper query is whether there is evidence that the defendant took affirmative steps to conceal wrongful conduct and that there must be actual concealment.  *See In re Unisys Corp. Retiree Medical Benefit "ERISA" Litigation*, 242 F.3d 497, 502-503 (3d Cir. 2001).  **Plaintiffs have alleged facts sufficient to support allegations that Defendants committed acts that had the effect of concealing allegedly fraudulent practices and therefore, the doctrine of equitable tolling may be applicable to this matter.**  *Id.*

Notice of Filing of Superior Court Filings, Adv. Doc. No. 377, Memorandum & Order, at 12.[37]

(Emphasis added.)

While the Plaintiffs are correct in stating that Judge Hodge found that the doctrine of equitable tolling ***may*** be applicable to the matter before the court based upon the allegations of fraudulent concealment by Defendants, it is important to recognize the differences in the

---

[37]In Judge Hodge's Memorandum and Order, he explained that "in deciding a motion to dismiss, [the court] may rely on undisputed documents that a Defendant attaches in support of its claim without the motion being converted to one for summary judgment.  *See Government Guarantee Fund of Rep. of Finland v. Hyatt, Inc.*, 965 F. Supp. [441] at 449 [D.V.I. 1997]. When ruling on a motion to dismiss, a court may also consider matters of public record, which does not convert a Rule 12(b)(6) motion to one for summary judgment."  Notice of Superior Court Filings, Adv. Doc. No. 377, at Memorandum and Order, at 7.

standards to be applied to a motion to dismiss in contrast to a motion for summary judgment.  As

Judge Hodge explained in his Memorandum and Order, the Plaintiffs have alleged facts

sufficient to support the allegations in their Second Amended Complaint.  Under Rule 12(b)(6)

of the Federal Rules of Civil Procedure, a party may move for the dismissal of a complaint on

the ground that the complaint fails to state a claim upon which relief can be granted.  The

standard applicable at the time of Judge Hodge's order[38] was that a complaint should not be

dismissed on this basis "unless it appears beyond doubt that the plaintiff can prove no set of facts

in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46

(1957).  When deciding a motion to dismiss at the time of Judge Hodge's order, the United

States Supreme Court explained that "[t]he issue is not whether a plaintiff will ultimately prevail

but whether the claimant is entitled to offer evidence to support the claim," with the court

construing all well-pleaded facts in the light most favorable to the plaintiff.[39]  *Scheuer v. Rhodes*,

416 U.S. 232, 236 (1974).

On the other hand, as explained, *supra*, a party is entitled to summary judgment if no

genuine issue as to any material fact exists.  Fed. R. Civ. P. 56(c).  In deciding a motion for

summary judgment, a party "may not rely merely on allegations or denials in its own pleadings;

rather its response must . . . set out specific facts showing a genuine issue for trial."  *Id.*  Any

---

[38] Judge Hodge's order predated both *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937 (2009), which together altered the standard to be applied to a motion to dismiss.  Thus, the standard elucidated in *Conley v. Gibson*, 355 U.S. 41 (1957), was the standard applied to determine a motion to dismiss at the time Judge Hodge's order was issued.

[39] Similarly, the standard applied in *Scheuer v. Rhodes*, 416 U.S. 232 (1974), was the standard applied in determining a motion to dismiss at the time Judge Hodge's order was issued.

doubts as to the existence of a genuine issue of material fact must be resolved against the party

moving for summary judgment.  Furthermore, while a court's determination of a motion to

dismiss is limited to a review of the facts and allegations set forth in the complaint, as well as

any undisputed documents attached in support of the plaintiff's claim, the court is to consider the

evidence of record, not the pleadings, to determine whether summary judgment should be

granted as a matter of law.  Fed. R. Civ. P. 56(c)(2).  Here, no evidence has been proffered to

show that these Defendants concealed fraudulent practices after March 30, 1999, or that

Plaintiffs could not have discovered any such concealment after Defendants were removed from

their positions on March 30, 1999.

Therefore, because of the different standard to be applied in this court's consideration of

Defendants' Motion for Summary Judgment, our finding that equitable tolling is not applicable

in this case, and that no genuine issue of material fact exists regarding the statute of limitations,

is not in conflict with the findings of Judge Hodge.  While the Plaintiffs may have pled facts

sufficient to support the claims of the Second Amended Complaint, thus surviving a motion to

dismiss, we find that the evidence of record does not show a genuine issue of material fact with

regard to the issue of equitable tolling of the statute of limitations at the summary judgment

stage.

### Adverse Domination

The Plaintiffs argue that the equitable doctrine of adverse domination tolls the applicable

statutes of limitations periods.[40]  The Defendants argue that this doctrine is inapplicable, as both

---

[40]We note that we were unable to find any Virgin Islands case law to indicate that the
Virgin Islands courts have accepted the adverse domination doctrine.  In fact, the court in

(continued...)

Cavanaugh and Reighley had no control over the Resort and the Associations after March 30,

1999.  Thus, this action which is brought against the Defendants individually cannot proceed.

For the reasons expressed above, i.e., that the evidence established that Defendants Cavanaugh

and Reighley had no involvement in or control over the Developer or the Board after March 30,

1999, the court agrees that adverse domination is not applicable in this case.  Even if the

Developer continued to control the board after March 30, 1999, Defendants Cavanaugh and

Reighley were not part of either the Developer or the Board.  In fact, their employment had been

terminated by the entities in control on March 30, 1999.  Moreover, we have no evidence that the

Defendants, in fact, controlled the Boards and there is no allegation, let alone evidence, that a

majority of the Boards were wrongdoers during the period Plaintiffs seek to toll the limitations

periods.

### The Merits of the Motion for Summary Judgment

Because we have determined that the appropriate statute of limitations for each claim of

the Second Amended Complaint has expired, and that both the discovery rule and the doctrine of

equitable tolling is inapplicable in this matter, it is not necessary for the court to consider the

other arguments made by the Defendants regarding the merits of the action in their Motion for

Summary Judgment.

### Indemnification

Finally, the Defendants argue that "Article XV of the By-laws of each of the Associations

_____

[40](...continued)
*Resolution Trust Corp.*, the case which the Plaintiff cites in support of application of the adverse
domination doctrine, noted that the acceptance of the adverse domination doctrine in
Pennsylvania had not yet been announced.  *Resolution Trust Corp. v. Farmer*, 865 F. Supp.
1143, 1151, 1152 n.7 (E.D. Pa. 1994).

. . . requires that the Associations indemnify its [sic] board members and officers against any expense reasonably incurred by them except where they shall be finally adjudged in a lawsuit to be liable for or guilty of gross negligence or willful misconduct." Specifically, Article XV states:

> The Association shall indemnify every Board Member and every Officer, his heirs, executors, and administrators, against all loss, cost and expense reasonably incurred by him in connection with any action, suit or proceeding to which he may be made a party by reason of his being or having been a Board Member or Officer of the Association, except as to matters wherein he shall be finally adjudged in such action, suit or proceeding, to be liable for or guilty of gross negligence or willful misconduct. The foregoing rights shall be in addition to and not exclusive of all other rights to which such Director or Officer may be entitled.

*See* Statement of Contradicted Facts, Adv. Doc. No. 379-21 at Exhibit 8(b), Declaration of Condominium Establishing Bluebeard's Castle Hilltop Villas III, Exhibit D, Article XV. (Note: the docket entry states that Attachment 20 is Exhibit 8(b) but Exhibit 8(b) is actually Attachment 21.)

Because the court will dismiss all claims against the Defendants in this adversary proceeding, the Defendants will not be "finally adjudged" to be liable for any gross negligence or willful misconduct. The language of Article XV is clear and unequivocal and the Defendants are entitled to be indemnified for all reasonably incurred costs and expenses regarding this lawsuit.

## Conclusion

Accordingly, Defendants' "Motion for Summary Judgment on All Claims" will be GRANTED and the Complaint against Defendants will be DISMISSED. Defendants Cavanaugh and Reighley are entitled to indemnification of their reasonable attorneys' fees and costs. An

appropriate Order will be entered.


DATE:  November 1, 2010

*Judith K. Fitzgerald*  rmab

Judith K. Fitzgerald
U.S. Bankruptcy Judge

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN
BANKRUPTCY DIVISION

IN RE:
**EQUIVEST ST. THOMAS, INC.,**                    Case No.: 07-30011 (JKF)
                                                  Chapter 11
                    Debtor.


**BOARD OF DIRECTORS,**                          Lead Adv. Proc. No. 07-3004 (JKF)
**BLUEBEARD'S CASTLE HILLTOP**
**VILLA CONDOMINIUM**                            Related to Adv. Doc. No.  370 [Motion
**ASSOCIATION, an unincorporated**              for Summary Judgment on All Claims]
**association in its own behalf and on**
**behalf of its members, et al.,**

                    Plaintiffs,

v.

**JOHN CAVANAUGH and WILLIAM**
**F. REIGHLEY,**

                    Defendants.

                                **ORDER**


        **AND NOW,** this **1**st day of **November, 2010,** for the reasons expressed in the foregoing

Memorandum Opinion, it is **ORDERED, ADJUDGED and DECREED** that Defendant John

Cavanaugh's and Defendant William F. Reighley's "Motion for Summary Judgment on All

Claims" is **GRANTED** and the Second Amended Complaint is hereby **DISMISSED** in its

entirety**.**

        It is **FURTHER ORDERED** that Defendants Cavanaugh and Reighley are entitled to

indemnification of their reasonable attorneys' fees and costs; and

        It is **FURTHER ORDERED** that, within 30 days of entry of this Order, Defendants

1

shall file an itemization of attorneys' fees and costs as to which they seek indemnification; and

It is **FURTHER ORDERED** that objections to the itemization shall be filed and served within 60 days hereof; and

It is **FURTHER ORDERED** that this court shall retain jurisdiction of the matter for the limited purpose of determining whether Defendants' itemization of attorneys' fees and costs is reasonable and to enter an order supplemental to the Motion for Summary Judgment; and

It is **FURTHER ORDERED** that, if any objections are filed, they will be heard on **Tuesday, March 1, 2011, at 9:00 a.m. (prevailing Eastern time)** before the Honorable Judith K. Fitzgerald, United States Bankruptcy Court, 5414 U.S. Steel Tower, 600 Grant Street, Pittsburgh, PA  15219-2702.  Any party wishing to appear telephonically at the hearing must make arrangements with CourtCall by phone (866-582-6878) or facsimile (866-533-2946) no later than 12:00 p.m. (prevailing Eastern time), on Monday, February 28, 2011,  and

It is **FURTHER ORDERED** that counsel for the Plaintiffs shall immediately serve a copy of this Memorandum Opinion and Order on all parties in interest who do not receive electronic notice and shall file a certificate of service forthwith.

_Judith K. Fitzgerald_

Judith K. Fitzgerald        **rmab**
United States Bankruptcy Judge

2